UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GABRIEL CALIXTO-PICHARDO, )<br>)<br>Defendant. )<br>) | Case No. 3:21-MJ-08106-GCS |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

On April 27, 2021, the prosecution filed a criminal complaint against Defendant Gabriel Calixto-Pichardo charging him with one count of improper entry in violation of 8 U.S.C. § 1325(a)(1). (Doc. 1). Though Magistrate Judge Mark A. Beatty initially released Mr. Calixto-Pichardo pursuant to the Bail Reform Act, 18 U.S.C. § 3142(a), Immigration and Customs Enforcement detained Mr. Calixto-Pichardo immediately upon his release. (Doc. 12; Doc. 15). Now before the Court is Mr. Calixto-Pichardo's motion to dismiss the indictment against him or to release him on the previously set bond conditions. (Doc. 15). For the reasons set forth below, the motion to dismiss is **DENIED.**

FACTUAL AND LEGAL BACKGROUND

In his affidavit supporting the prosecution's April 27, 2021 complaint, Special Agent Robert Lawson of the Immigration and Customs Enforcement ("ICE") Homeland Security Investigations division stated that the basis for the complaint was that Mr. Calixto-Pichardo's status at last entry was Entry Without Inspection ("EWI"), and his

current immigration status was "no lawful status." (Doc. 15, p. 2). ICE had initially attempted to locate and arrest Mr. Calixto-Pichardo as he was being released from the Illinois Department of Corrections ("IDOC") after serving a sentence for kidnapping. *Id*. at p. 3. However, the attempt was unsuccessful. *Id*. ICE eventually located Mr. Calixto-Pichardo in the Southern District of Illinois in January 2021. *Id*.

In a typical case for unlawful immigration, the United States Attorney's Office ("USAO") and ICE cooperate in order to charge the defendant. Under 8 U.S.C. § 1357(a), ICE may conduct an arrest without a warrant of "any alien in the United States, if [the agent] has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ." 8 U.S.C. § 1357(a)(2).[1] ICE must then decide whether or not to refer the arrestee for criminal prosecution. *See* U.S. ICE/ERO, 1 CRIMINAL ALIEN PROGRAM HANDBOOK, ERO 11157.1 (May 14, 2013), available at https://www.americanimmigrationcouncil.org/sites/default/files/foia_documents/access_to_counsel_ice_production_9-25-2014.pdf.

After referral, the USAO must determine whether to pursue criminal charges. If the USAO chooses to prosecute the case, the attorney will obtain a criminal arrest warrant and the arrestee will be taken into custody by the U.S. Marshal. ICE officials may issue a detainer in order to ensure the agency's ability to initiate removal proceedings upon an

---

[1] ICE officers may also make arrests for felonies without a warrant if the officer has reason to believe the defendant is guilty of that felony and there is a likelihood of that defendant escaping prior to a warrant being obtained for their arrest. *See* 8 U.S.C. § 1375(a)(4). However, this statute is inapplicable in this case, as a first offense for improper entry is a misdemeanor. *See* 8 U.S.C. § 1325(a).

arrestee's release. A detainer requests that any other federal, state, or local law enforcement agency contact ICE before releasing the defendant, so that ICE officers can take the defendant into custody for the purpose of removing the defendant from the country. *See* 8 C.F.R. § 287.7(a). In this case, ICE issued a detainer for Mr. Calixto-Pichardo when he was first arrested for kidnapping.

Shortly after a defendant is arrested, the defendant's first appearance before a judicial officer triggers the application of the Bail Reform Act ("BRA"). *See* 18 U.S.C. § 3142, *et seq*. The BRA regulates the conditions under which a defendant may be released on bond or bail. In considering whether a defendant should be released, a court considers: (i) release on personal recognizance or on execution of an unsecured appearance bond; (ii) release on certain conditions outlined in § 3142(c); (iii) temporary detention to permit revocation of conditional release, deportation or exclusion; or (iv) detention pursuant to § 3142(e).

On May 17, 2021, pursuant to the BRA, Judge Beatty ordered that Mr. Calixto-Pichardo be released on the conditions that he not violate any law while on release, cooperate in the collection of a DNA sample, advise the Court or U.S. Probation/Pretrial Services Office of any changes to his residence or telephone number in writing, appear at all proceedings and surrender for the service of any sentence imposed as directed, and sign an appearance bond, if ordered. (Doc. 12). However, Mr. Calixto-Pichardo was not released, but instead transferred to ICE custody. (Doc. 15).

ANALYSIS

In his motion to dismiss, Mr. Calixto-Pichardo broadly alleges that "the purpose of ICE custody is not to effectuate removal but to hold him pending prosecution." (Doc. 15, ¶¶ 3, 6)(citing *United States v. Ventura*, 17-CR-418(DIL), 2017 WL 5129012, *1 (E.D.N.Y. Nov. 3, 2017), remanded for reconsideration by No. 17-3904-cr, 747 Fed. Appx. 20(mem)(2d Cir. 2018)). Mr. Calixto-Pichardo also argued that the Government cannot simultaneously proceed on a dual criminal prosecution and deportation track. *Id.* at ¶ 5. Mr. Calixto-Pichardo prays that the Court either require the Government to release him under the bond conditions set in the case and continue the prosecution or require the prosecution to dismiss the indictment with prejudice, forego its illegal entry prosecution, and proceed with his removal. *Id.* at p. 2.

I. **Whether Mr. Calixto-Pichardo's Detention is Pretextual**

During the June 21, 2021 hearing, Mr. Calixto-Pichardo asserted that ICE's detention of him was necessarily pretextual and therefore in conflict with the requirements of the BRA. In providing the foundation for this argument, Mr. Calixto-Pichardo initially relied on both *Ventura* and *United States v. Trujillo-Alvarez*, 900 F.Supp.2d 1167, 1178 (D. Or. 2012). In both *Trujillo-Alvarez* and *Ventura*, the respective courts recognized that ICE retains the ability to take the defendant back into administrative custody "for the purpose of deporting him." *Ventura*, 2017 WL 5129012, at *2 (citing *Trujillo-Alvarez*, 900 F.Supp.2d at 1178). However, "nothing permits ICE . . . to disregard the congressionally mandated provisions of the [BRA] by keeping a person in detention for the purpose of delivering him to trial when the [BRA] itself does not

authorize such pretrial detention." *Id*. On appeal of *Ventura*, counsel for the defendant acknowledged that ICE was not powerless to initiate a removal proceeding against someone once they have a pending federal case. *See Ventura*, 747 Fed. Appx. at 22. Instead, the essential question was whether the district court could make a justified finding, based on the circumstances before it, that the purpose of ICE custody was not to effectuate removal but to hold the defendant pending prosecution. *Id*. In order to make such a finding, the Court must see evidence that the detention amounts to a pretextual, bad faith, or otherwise wrongful detention in contravention of the magistrate judge's orders under the BRA. *Id*. *Cf. United States v. Stolica*, No. 09-cr-30047-DRH, 2010 WL 345968, *1 (S.D. Ill. Jan. 26, 2010)(noting that a defendant may show that ICE is pretextually holding him to avoid the mandates of the Speedy Trial Act by demonstrating that the administrative civil detention is solely or primarily to hold the defendant for future prosecution, prompted by wrongful collusion with the prosecution, and finding that the argument fails where civil officials had a lawful basis for the detention).

Mr. Calixto-Pichardo does not provide any evidence of pretext, bad faith, or wrongful detention. Rather, during the June 21, 2021 hearing, Mr. Calixto-Pichardo argued that his detention was pretextual due to a legal premise, *i.e.* because ICE cannot remove Mr. Calixto-Pichardo while the Government is prosecuting a criminal case against him, the effect of his detention with ICE is that he will be detained until trial. In support, Mr. Calixto-Pichardo notes that portions of the Immigrant and Nationality Act ("INA") forbid the removal of an immigrant when that immigrant's departure is prejudicial to the United States. *See* 8 C.F.R. § 215.2(a). Specifically, the regulation states:

"[n]o alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." *Id.* Section 215.3 notes that the departure of any "alien who is needed in the United States as . . . a party to [] any criminal case under investigation or pending in the United States" shall be considered prejudicial. 8 C.F.R. § 215.3(g). Mr. Calixto-Pichardo argues that, when read as a coherent and harmonious whole, these two statutes prevent ICE from deporting him until after the conclusion of his criminal proceedings. The result is that ICE is effectively detaining Mr. Calixto-Pichardo for the purposes of holding him pending trial.

When interpreting statutory language, courts are to begin their inquiry by examining the statute's text; if the text is unambiguous, the inquiry ends there. *See Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1749 (2020) (internal citations omitted). In conducting this analysis, the Court should consider the statute's entire text, in view of its structure and the physical and logical relation of its many parts. *See Beeler v. Saul*, 977 F.3d 577, 585 (7th Cir. 2020) (internal citations omitted). Courts therefore interpret statutes as a "symmetrical and coherent regulatory scheme[;]" if possible, all parts of a statute should fit into a harmonious whole. *Owner-Operator Indep. Drivers Assoc., Inc. v. U.S. Dept. of Transp.*, 840 F.3d 879, 888 (7th Cir. 2016). *See also Duncan v. Walker*, 533 U.S. 167, 174 (2001)(holding that courts should be "reluctant to treat statutory terms as surplusage in any setting"). Careful statutory interpretation reveals that although his argument appears to be logically sound, Mr. Calixto-Pichardo misinterprets § 215.2 and § 215.3 by conflating

deportation or removal with voluntary departure. *See United States v. Barrera-Landa*, 964 F.3d 912, 923 (10th Cir. 2020).

Neither § 215.2 nor § 215.3 relate to removal. Instead, the two regulations prohibit those immigrants who are parties to a criminal case from *voluntarily* departing the United States. *See United States v. Baltazar-Sebastian*, 990 F.3d 939, 946 (5th Cir. 2021)(quoting *United States v. Lett*, 944 F.3d 467, 472 (2d Cir. 2019)) (internal quotation marks omitted) (emphasis in original). Voluntary departure is a "discretionary form or relief that allows certain favored aliens – either before the conclusion of removal proceedings or after being found deportable – to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). This process stands in contrast to deportation proceedings where an immigrant does not leave voluntarily. *See, e.g.*, *Lopez-Angel v. Barr*, 952 F.3d 1045, 1050-51 (9th Cir. 2019)(holding that the ordinary meaning of the word "departure" refers to a volitional act; the term does not include deportation or removal proceedings). *Cf. United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017)(differentiating flight from involuntary removal by ICE). By its text, § 215.2(a) addresses voluntary departures. The regulation limits the actions of an "alien" departing or attempting to depart the United States and restricts the circumstances under which an alien may do so. Further, though the title of the regulation states that it outlines the authority of a departure-control officer to prevent an alien's departure, the remainder of § 215.2(a) limits that authority to serving the alien with a "written temporary order directing him not to depart, or attempt to depart," the United States. This language indicates that this portion of the regulation controls whether

and when an alien may voluntarily depart, rather than the circumstances under which ICE may deport the alien.

Other sections of the INA further support finding that § 215.2 regulates an alien's ability to depart voluntarily, rather than the Government's ability to deport the alien. For instance, § 215.4 provides that an alien whose departure is prevented under § 215.2 may request a hearing on the issue of his departure. *See* 8 C.F.R. § 215.4(a). This regulation places the onus on the alien to act in response to the Government's decision denying him the ability to depart. Accordingly, when read as a harmonious whole, the INA does not prevent ICE from deporting an alien during the pendency of a criminal proceeding to which that alien is a party.

When ICE detains a defendant in order to pursue deportation proceedings after a defendant has been released on bail under the BRA, ICE may incidentally frustrate the prosecution by deporting the defendant before criminal proceedings have concluded. *See, e.g.*, 8 U.S.C. § 1231(a)(5)(mandating that, when an alien is subject to removal, ICE "shall remove the alien from the United States within a period of 90 days," or within the removal period, including the date the alien is released from detention if confined outside of an immigration process). However, the Court lacks the power to institute orders forbidding that result. It is "not appropriate for [the Court] to resolve Executive Branch turf battles[;]" instead, the conflict is a matter for the Executive Branch to resolve internally. *Ailon-Ailon*, 875 F.3d at 1339. In this case, ICE appears prepared to proceed with Mr. Calixto-Pichardo's removal proceeding, though the immigration court has also granted him a continuance. (Doc. 27). Mr. Calixto-Pichardo's removal hearing is currently

set for today's date, indicating that ICE has both the power and intention of removing Mr. Calixto-Pichardo prior to the conclusion of the present criminal case. *Id*. As ICE clearly has the statutory power to remove Mr. Calixto-Pichardo prior to the conclusion of his criminal case, the foundational premise of Mr. Calixto-Pichardo's argument that his detention is pretextual falls flat.

   II.   **Whether the Government may Proceed on a Dual Deportation and Criminal Prosecution Track**

Mr. Calixto-Pichardo also argues that the Government may not simultaneously pursue deportation and criminal prosecution against him. *See* (Doc. 15). As support, Mr. Calixto-Pichardo again cites to *Ventura*, which held that ICE may not avoid the mandates of the BRA by enforcing its detainer after a defendant has been released during a criminal proceeding. *See Ventura*, 2017 WL 5129012, at *2-3 (citing *Trujillo-Alvarez*, 900 F.Supp.2d at 1179). However, the Court is disinclined to read Mr. Calixto-Pichardo's cited law in such a favorable light. Numerous recent circuit court decisions have contradicted the district court findings in *Ventura* and *Trujillo-Alvarez*. *See United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018); *United States v. Lett*, 944 F.3d 467 (2d Cir. 2019); *United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019); *United States v. Soriano Nunez*, 928 F.3d 240 (3d Cir. 2019); *United States v. Barrera-Landa*, 964 F.3d 912 (10th Cir. 2020); *United States v. Pacheco-Poo*, 952 F.3d 950 (8th Cir. 2020); *United States v. Baltazar-Sebastian*, 990 F.3d 939 (5th Cir. 2021). In many of these cases, the respective courts noted that the BRA and INA should not be read to conflict. *See, e.g., Lett*, 944 F.3d at 470 (stating that the BRA and the INA serve different purposes, govern different adjudicatory proceedings, and provide

independent statutory bases for detention); *Pacheco-Poo*, 952 F.3d at 952 (noting that the BRA regulates a judicial officer's pretrial release of federal criminal defendants, while the INA governs the Attorney General's removal of aliens); *Vasquez-Benitez*, 919 F.3d at 553 (holding that Congress has never indicated that the BRA is intended to displace the INA).

As when interpreting a statute's text, when determining whether statutes conflict, a court should begin with the first step in statutory interpretation, *i.e.*, determining the plain meaning of the statutes' texts. *Cf. Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016)(outlining the rules of statutory interpretation). In order to do so, the Court should look to the particular portion of the statutes cited, as well as to the overall language and design of the statutes as a whole. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). A statute's language should then be interpreted with its ordinary, contemporary, and common meaning, unless the language is otherwise defined. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (internal citations omitted). If the plain language is unambiguous, then the court's inquiry ends there. *See River Rd. Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 649 (7th Cir. 2011). Accordingly, unless Congress has clearly expressed intent to the contrary, if the plain language of the two statutes do not indicate conflict, the court must regard each statute as effective. *See Morton v. Mancari*, 417 U.S. 535, 551 (1974).

The court in *Trujillo-Alvarez* predicates its reading of the relationship between the BRA and the INA on language in § 3142(d) of the BRA. *See Trujillo-Alvarez*, 900 F.Supp.2d at 1174. *See also Ventura*, 2017 WL 5129012, at *2 (citing *Trujillo-Alvarez*, 900 F.Supp.2d at 1179; 18 U.S.C. § 3142). Under § 3142(d), if a judicial officer determines that the defendant

is not a citizen of the United States or lawfully admitted for permanent residence, and that such person may flee or pose a danger to the community, the judicial officer shall order that defendant's detention for no more than ten days. The judicial officer must also direct the attorney for the Government to notify the appropriate court, probation, law enforcement, or immigration official. *Id*. If that official "fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, *notwithstanding the applicability of other provisions of law governing release or pending trial or deportation or exclusion proceedings*." *Id*. (emphasis added).

Though this language permits a judicial officer to order the temporary detention of an alien, it does not override ICE's ability to detain an alien independently.[2] *See Pacheco-Poo*, 952 F.3d at 953. The subsection regulates the decisions of a "judicial officer," rather than ICE. *Id*. Further, the section specifically requires the judicial officer to provide notice so that ICE may take the defendant into custody. *Id*. This facilitates ICE detention, rather than mandating that ICE only detain a defendant pursuant to a temporary release order under this section. *Id*. Finally, § 3142(d) explicitly states that this section does not interfere with the applicability of other provisions of law governing release pending deportation proceedings. *Id*. This language indicates that Congress intended to permit ICE and the United States Attorney's Office to pursue parallel deportation and prosecution tracks for the same defendant. Here, in a display of cooperation between ICE

---

[2] Courts are also particularly suspicious of this argument when the defendant was not released pursuant to § 3142(d) in the first place. *See Pacheco-Poo*, 952 F.3d at 953.

and the United States Attorney's Office, the Executive Branch initially decided to proceed with the criminal prosecution of Mr. Calixto-Pichardo. Though the later decision to proceed with Mr. Calixto-Pichardo's removal proceedings may frustrate the result of that initial cooperation, the choice to prosecute Mr. Calixto-Pichardo criminally does not strip ICE of its ability to continue its own deportation proceedings against him. Accordingly, the Court rejects the contention that the Government cannot proceed on a dual deportation and criminal prosecution track. Mr. Calixto-Pichardo's motion to dismiss is therefore denied.

## Conclusion

For the above-stated reasons, Defendant Calixto-Pichardo's motion to dismiss (Doc. 15) is **DENIED.** The instant matter is therefore set for trial on Wednesday, **August 11, 2021**, at 10:00 a.m., in the East St. Louis Courthouse.

**IT IS SO ORDERED.**

**Dated: July 6, 2021.**

Digitally signed by Judge Sison 2
Date: 2021.07.06 14:24:55 -05'00'

_____
**GILBERT C. SISON**
**United States Magistrate Judge**